AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

FILED

DEC 1 8 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| Google, LLC 1600 Amphitheatre Parkway, Mountain View, CA 94043 | ) ) ) | 18 MJ 6331 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252 & 2252A | Certain activities relating to materials involving the sexual exploitation of minors and child pornography |
| 18 U.S.C. § 2422(b) | Coercion and enticement |

The application is based on these facts:

See Attached

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kayade Ereme , Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/18/19

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Jill L. Burkhardt
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Special Agent Kayade Ereme, upon being duly sworn do hereby state that the following is true to my knowledge and belief:

### INTRODUCTION

1.     I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed since April 2013. I am currently assigned to the HSI Child Exploitation Group in San Diego, California. From August 2014 until March 2018, I was assigned to the Deputy Special Agent in Charge San Ysidro (DSAC San Ysidro Office) in San Diego, California where I specialized in narcotics and contraband smuggling investigations. I was assigned to a narcotics smuggling unit known as the San Diego County Sheriff's Border Crime Suppression Team.   My duties included investigating the illicit trafficking of controlled substances into the United States of America while working in conjunction with the San Diego County Sheriff's Department. I was previously assigned to the Office of the Special Agent in Charge, Baltimore (SAC Baltimore), where I worked with the Gang Unit and assisted in the investigation of a Racketeering Influenced and Corrupt Organization (RICO) investigation targeting the MS-13 Street Gang and their affiliates.

2.     I graduated Magna Cum Laude from Bowie State University with a Bachelor of Science Degree in Criminal Justice. I am a graduate of the Criminal Investigator Training Program administered by the Federal Law Enforcement Training Center (FLETC) located in Glynco, CA, as well as the HSI Special Agent Training (HSISAT) program.  Throughout my tenure with HSI, I have conducted and/or participated in numerous investigations including narcotics, financial crimes, and child pornography investigations. I have received specialized training in

1  conducting Internet investigations regarding the sexual exploitation of minors, child
2  pornography, and the preservation and review of computer related evidence.  As part
3  of my current duties with the ICAC task force, I investigate criminal violations
4  relating to child exploitation and child pornography, including violations pertaining
5  to the illegal production, distribution, receipt, and possession of child pornography,
6  in violation of 18 U.S.C. §§ 2252, 2252A, and 2422(b).  Additionally, I have had the
7  opportunity to observe and review many examples of child pornography (as defined
8  in 18 U.S.C. § 2256) in numerous forms of media including computer media, and I
9  have participated in the execution of numerous search and arrest warrants.

10      3.      I make this affidavit in support of an application for a search warrant
11  under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for Google Limited
12  Liability Corporation (LLC), (Google), to search the following Email Account, as
13  described in Attachment A, for items that constitute, evidence, fruits, and
14  instrumentalities of violations of federal law, namely 18 U.S.C. §§ 2252, 2252A,
15  and 2422(b), as further described in Attachment B, for the period from January 1,
16  2017 to the present date:

17          a. emraldmonth@gmail.com (**Target Account**)

18      4.      The information set forth in this affidavit is based on my own personal
19  knowledge, knowledge obtained from other individuals during my participation in
20  this investigation, including other law enforcement officers, my review of
21  documents and computer records related to this investigation, communications
22  with others who have personal knowledge of the events and circumstances
23  described herein, and information gained through my training and experience.
24  Because this affidavit is submitted for the limited purpose of establishing probable
25  cause, it does not set forth each and every fact that I or others have learned during
26  the course of this investigation.

27

**BACKGROUND REGARDING GOOGLE**

5.    Google is a corporation that provides Internet services worldwide. Google's electronic mail service allows Internet Service Provider (ISP) subscribers to communicate with other ISP subscribers and with others through the Internet via email communication and instant messaging. ISP subscribers access Google services through the Internet.

6.    Subscribers to Google use screen names during communications with others. The screen names may or may not identify the real name of the person using a particular screen name. Although Google requires users to subscribe for a free account, Google does not verify the information provided by the subscriber for its free services. At the creation of a Google account and for each subsequent access to the account, Google logs the Internet protocol (IP) address of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet. IP addresses are leased to businesses and individuals by ISPs. Obtaining the IP addresses that have accessed a particular Google account often identifies the ISP that owns and has leased that address to its customer. Subscriber information for that customer then can be obtained using appropriate legal process.

7.    An Internet protocol address or "IP address," is expressed as four groups of numbers separated by decimal points and/or eight groups of numbers separated by colons, and is unique to a particular subscriber account during an online session. The IP address provides a unique location making it possible for data to be transferred between computers. IP addresses can be dynamic, meaning that the ISP assigns a different number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. Internet companies such as Google typically log the IP address used by its subscribers to access Google,

1  such as email, chat, and instant messaging. These logs are available to law
2  enforcement using appropriate legal process.

3      8.    An IP address is a unique address through which a computer connects
4  to the Internet. IP addresses are leased to businesses and individuals by ISPs.
5  Obtaining the IP addresses that have accessed a particular Google account often
6  identifies the ISP that owns and has leased that address to its customer. Subscriber
7  information for that customer can then be obtained using appropriate legal process.

8  **FACTS IN SUPPORT OF PROBABLE CAUSE**

9      9.    On or about October 27, 2018, Homeland Security Investigations
10  (HSI), Special Agent in San Diego, California began communicating with an
11  individual on the chatting platform known as Omegle.[1] During the communication,
12  the HSI Special Agent, acting in an undercover capacity and posing as a 12-year-old
13  female from Eastlake, California (UC agent), responded to an individual online
14  identifying himself as "Colin." During the course of the communications, "Colin"
15  communicated with the UC using the email address emraldmonth@gmail.com
16  (**Target Account**) and the moniker "Cory O'Hoole." As detailed below, "Colin"
17  aka "Cory O'Hoole" has been identified as Cory Alan ELGIN.

18      10.    On October 27, 2018, ELGIN initiated communication with the UC
19  through the Omegle chatting platform, and the following conversation transpired
20  with the online UC agent. In the following synopsis of the Omegle communication
21  chat, ELGIN aka "Colin" is identified as "CE" and the UC agent is identified as
22  "UC":

23

---

24  [1] OMEGLE is a free online chat platform that allows users to anonymously chat with one another.
25  OMEGLE matches individuals in a private chat setting sometimes based off of key similarities or
keywords. On the OMEGLE platform both individuals can chat anonymously about any topic.
26  On some occasions individuals chatting on OMEGLE can exchange contact information to further
the communication off of the OMEGLE platform and onto other forms of communications such
27  as E-mail and phone communication.

| CE | Hey, 28m |
|---|---|
| UC | Hi hi<br><br>12/f/Eastlake1[2] |
| CE | Oh, cool. How are you? |
| UC | I'm cool bored n u? |
| CE | Really bored too. I'm Colin, Whats your name? |
| UC | I'm ari. Wuts ur name ? |
| CE | Colin<br><br>It's nice to meet you. I'm glad you don't mind my age. |
| UC | Yea idc about ur age. Do u care about mine? |
| CE | Not in a bad way.  I actually like girls your age.  They're cute. |
| UC | Hahaha well idk about the rest of them but I know im cute(emoji)<br><br>What's ur name |
| CE | Haha! I am lucky then.<br><br>I've said it twice silly.<br><br>My name is Colin |
| UC | Ooo hahaha I thought u wur saying Coolin hahahah a |

---

[2] On OMEGLE, initial communications typically begin with the user indicating age, sex, and location.

| CE | Hahaha. Silly girl. You are right, you're totally cute. |
| --- | --- |
| | Do you have a boyfriend? |
| UC | (Emoji) |
| | And no I don't |
| | U have a girlfriend? |
| CE | I kind of want to see if you could be my girlfriend. |
| UC | Me!!? Hahaha but I don't even know u yet |
| CE | I mean, yes, I know. But I want to get to know you. |
| UC | Ooo okay (Emoji) |
| CE | But like, while I do, I want you to know that I want to try dating you. If that's not too much. |
| UC | Haha no that's not to much |
| | U live in Eastlake? |
| CE | Okay. Good |
| | And, I don't. But it wouldn't be hard to get over there. |
| | I'm like 20 mins away, by car. |
| UC | Oooo okay hahaha cause obvious I can't drive yet hahaha |
| CE | Yes, of course, baby. I can always come to you. Do you ever get to hang out anywhere I could meet you for dates? |

| UC | I walk to the park sometimes after school |
|----|----|
| CE | See, that'd be perfect. We could just find somewhere to hang out and talk. Or kiss :) |
| UC | (Emoji). What else? |
| CE | I'd love to try everything with you.<br><br>Have you kissed a boy? |
| UC | Yea I have haha duh. N whats everything?<br><br>Haha |
| CE | I want to fuck you. Not just once, but a lot. In a lot of different ways. |
| UC | Hahaha idk though I still have my v card. My friend says it hurts the first time |
| CE | I wouldn't rush you to lose it. I am pretty thin though, so it wouldn't hurt to bad<br><br>Do you have kik or snap we can talk on? |
| UC | Hmm okay that make me feel better cause I don't want it to hurt<br><br>Smh no my mom wont tell me the psswrd go apple store so I can't download any apps. She don't want me to have them |
| CE | No, I am really wanting to make it feel good for you. It will. |
| UC | Hmmmm okay haha |

7

| CE | So, how am I supposed to talk to you after today? :( |
|---|---|
| UC | Hmm idk.. I have a i phone.. |
| CE | Would you give me your number? Or do you want to agree to meet first and exchange numbers there? |
| UC | Hmm I guess I can give you my number. U seem cool n safe |
| CE | I'd like that. I don't want to hurt you, just make you feel good. But if you aren't sure, you don't have to give it right now |
| UC | Well it's up to you. If you want it III give u my number |
| CE | I want it |
| UC | Lol okay its 6193029219<br><br>Ima prob get off of here soon anyway |
| CE | Okay, I'll text you until you want to go. Then over the phone |
| UC | Okay (Emoji)<br><br>Is that u that just text me? 0850? |
| CE | Yep. |
| UC | Okay (Emoji) |

11.    The UC received a text message from phone number 951-723-0850. Based upon records checks, agents identified this phone number as belonging to ELGIN. Communications between the UC and ELGIN continued on October 27,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

2018, through text message. During the course of those communications, the UC reiterated "she" had not had her first period and did not have "boobs." In response, ELGIN stated "I'm glad. I want to suck on your nipples and make them hard," and "Also, that means we don't have to wear a condom and Daddy can cum in you as much as he likes."

12.    ELGIN texted the UC on the morning of October 28, 2018, and communications continued thereafter through November 1, 2018. During communications between the UC and ELGIN on October 29, 2018, ELGIN attempted to send pictures of himself. When the pictures would not go through on text message, ELGIN asked the UC for an email address. Shortly thereafter, the UC received a picture of an adult male from **Target Account**. The user of the **Target Account** also sent the UC agent a picture of an erect male penis being held by one hand. Agents at that time were unable to confirm the **Target Account** belonged to ELGIN. However, agents compared the photo sent of the adult male with ELGIN's driver's license photo and confirmed it appeared to be the same individual.

13.    The conversation between ELGIN and the UC continued through both text messages and email from the **Target Account**, with ELGIN telling the UC he would like to meet "her" in person and engage in sexual acts with "her." ELGIN asked the UC about meeting on Thursday (i.e. November 1st), and a discussion ensued about where they could meet. The UC told ELGIN "she" was a student and lived in the Eastlake area of San Diego. ELGIN and the UC made plans to meet on November 1, 2018, near the Eastlake Mall, in Otay Mesa, California, within the Southern District of California, around 5:00 p.m. On Thursday, November 1, 2018, at 8:40 a.m., ELGIN texted the UC regarding what he would want to do when they met:

| ELGIN | I am going to kiss you today |
|---|---|
| | And while we're eating ice cream, I'm going to let you sit on my lap and I'm going to put my hands in your pants to play with your pussy. |
| | And I'm going to let you lick and play with my cock if you can. |
| | I wish we even had a spot to have sex, because I want you so badly. I don't need to be reminded of how much I want you. |

14.     Agents conducted surveillance at the Jack-in-the-Box Restaurant located near the Eastlake Mall prior to the planned meeting time. At approximately 4:30 p.m., Agents observed an individual matching the description of ELGIN arrive to the meeting location. The UC agent and ELGIN had a conversation through text in which the UC agent informed ELGIN that the UC agent would be "at the jack n the box". Surveillance agents observed an individual matching the description of ELGIN walking to the Jack in the Box. Agents identified themselves and placed the individual, who was identified as ELGIN, under arrest.

15.     Incident to ELGIN's arrest on November 1, 2018, agents seized two cellular phones from ELGIN's possession. The UC agent placed a call from the UC cell phone to the phone number 951-723-0850. Agents observed one of the cellular phones seized from ELGIN, a Black Pixel 3 Google Cellular Phone, begin to ring and display the UC phone number.

16.     ELGIN was advised of his Miranda rights. He waived those rights and made a statement. ELGIN admitted he had been texting with a girl who appeared to be 12-years-old, and admitted that most of the conversations were sexual. ELGIN admitted that he sent a picture of his penis and his face during the communications. ELGIN told agents, however, that he suspected the person he was communicating with was law enforcement and went forward with the meeting as a way of getting

help. ELGIN told agents he possessed "hardcore" videos of children, who he believed to be six or seven-years-old, at his residence. ELGIN also admitted he previously "had a relationship" with a 12-year-old minor female who lives in New Hampshire, which ended in May of 2018. ELGIN stated that he utilized online services, such as Skype (a telecommunications application software product that provides video chat and voice calls between computers, tablets, and other mobile devices), to communicate with the minor. ELGIN was arrested and charged with violation of 18 U.S.C. § 2422(b).

17.    ELGIN consented in writing to a search of his residence, located in Imperial Beach, California. Agents went to the residence and located a laptop computer and another cellular phone. Agents seized these items from the residence pursuant to ELGIN's written consent on November 1, 2018. The items were transported to the HSI Offices at 880 Front Street, Suite 3200, San Diego, CA, and remain at that location.

18.    Agents obtained a warrant to search all of the items seized from ELGIN's person and residence on the date of his arrest. Upon forensic examination of the Black Pixel 3 Google Cellular Phone, agents found the **Target Account** was one of the email address associated with the phone. Forensic analysis of the remaining seized items is ongoing.

19.    As a result of my training and experience in child sexual exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the sexual exploitation of children:

a.    Individuals who sexually exploit children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually

11

1   suggestive poses, such as in person, in photographs, or other visual media; or from

2   literature describing such activity.

3         b.    Individuals who sexually exploit children may collect sexually

4   explicit or suggestive materials and oftentimes use these materials for their own

5   sexual arousal and gratification. Furthermore, they may use these materials to lower

6   the inhibitions of children they are attempting to seduce, to arouse the selected child

7   partner, or to demonstrate the desired sexual acts. Many of these communications

8   are done online via email or instant messaging.

9         c.    Individuals who sexually exploit children almost always possess

10   and maintain their child pornographic material and other images of children used in

11   their sexual exploitation, that is, their pictures, films, videos, correspondence,

12   mailing lists, etc., in the privacy and security of their home or secure online accounts.

13   These individuals typically retain this information for many years.

14         d.    Likewise, individuals who sexually exploit children often

15   maintain their child pornography, other images of children, and discussions about

16   the sexual exploitation of children in a safe, secure and private environment, such as

17   an online account, computer, cellular phone, or in their residence. These collections

18   are often maintained for several years and are kept accessible, to enable the collector

19   to view this material, which is valued highly.

20         e.    Individuals who sexually exploit children often correspond with

21   and/or meet others to share information and materials; are rarely able to completely

22   destroy correspondence from other child pornography distributors/collectors;

23   conceal correspondence as they do their sexually explicit material; and often

24   maintain lists of names, addresses, and telephone numbers of individuals with whom

25   they have been in contact and who share the same interests in child pornography or

26   the sexual exploitation of children.

27

f.    Individuals who sexually exploit children prefer not to be without their child pornography and other images of children for any prolonged time period.   Storage of this content in email accounts or cloud-based storage accounts gives the offender the ability to access it from any computer.

g.    Oftentimes, individuals who sexually exploit children will download and store images and communications of children they know or with whom they have communicated.   These images many not necessarily be pornographic or obscene in nature, however they are often used for their own sexual gratification.

20.    Email and social media users, to include individuals who sexually exploit children, often save online messages for extended periods of time.   This information is usually saved automatically for the convenience of users.   During the course of my investigative duties, I have reviewed dozens of email and social media accounts, many of which contain messages that date back to the creation of the account.    Furthermore, online users communicating with other like-minded individuals often save messages so they can keep track of communications and easily re-contact each other.

21.    Based on the foregoing information, there is reason to believe evidence and instrumentalities pertaining to violations of 18 U.S.C. §§ 2252, 2252A, and 2422(b), may exist in the **Target Account**. Specifically, the **Target Account** was used by ELGIN to communicate with a UC who he believed to be a 12-year-old minor female, and to send a photo of his erect penis. Based on ELGIN's post-arrest statements, that that he had previously engaged in communications with another 12-year-old in New Hampshire, and that he possessed "hardcore" videos of young children, I submit it is reasonable to believe such evidence may exist within the **Target Account**.

//

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

22.     Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Google (hereinafter "the internet service provider" or "the ISP") are not. It would be inappropriate and impractical for federal agents to search the vast computer network of the ISP for the relevant accounts and then to analyze the contents of those accounts on the premises of the ISP. The impact on the ISP's business would be severe.

23.     Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs, and any other content from the ISPs accounts, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of the ISP, to protect the privacy of the ISP's subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, Homeland Security Investigations seeks authorization to allow the ISP to make digital copies of the entire contents of the accounts subject to seizure. The copies will be provided to me or to any authorized federal agent. The copies will be imaged and the images will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

24.     Analyzing the data to be provided by the ISP may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the

1   review process. Keyword searches do not capture misspelled words, reveal the use
2   of coded language, or account for slang. Keyword searches are further limited when
3   electronic records are in or use foreign languages. Certain file formats also do not
4   lend themselves to keyword searches. Keywords search text. Many common
5   electronic mail, database and spreadsheet applications, which files may have been
6   attached to electronic mail, do not store data as searchable text. Instead, such data is
7   saved in a proprietary non-text format. And, as the volume of storage allotted by
8   service providers increases, the time it takes to properly analyze recovered data
9   increases dramatically. The ISP does not always organize the electronic files they
10  provide chronologically, which makes review even more time consuming and may
11  also require the examiner to review each page or record for responsive material.

12      25.   Based on the foregoing, searching the recovered data for the
13  information subject to seizure pursuant to this warrant may require a range of data
14  analysis techniques and may take weeks or even months. Keywords need to be
15  modified continuously based upon the results obtained and, depending on the
16  organization, format, and language of the records provided by the ISP, examiners
17  may need to review each record to determine if it is responsive to Attachment B. The
18  personnel conducting the examination will complete the analysis and within ninety
19  (90) days of receipt of the data from the service provider, absent further application
20  to this court.

21      26.   Based upon my experience and training, and the experience and training
22  of other agents with whom I have communicated, it is necessary to review and seize
23  all electronic communications that identify any users of the subject account(s) and
24  any electronic mails sent or received in temporal proximity to incriminating
25  electronic mails that provide context to the incriminating mails.

26
27

27.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification, segregation and extraction of data within the scope of this warrant.

### PROCEDURES TO PROTECT THIRD PARTY PRIVACY

28.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant. In the event that the personnel lawfully conducting the analysis identify information pertaining to crimes outside the scope of the warrant such information will not be used in any way except to obtain a new warrant authorizing a search for such information. In the event a new warrant is obtained, the government may make use of the data seized in any lawful manner. Absent a new warrant, the personnel conducting the analysis may continue to search and seize data only within the scope of this warrant.

### GENUINE RISKS OF DESTRUCTION OF EVIDENCE

29.    Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, if the subject receives advance warning of the execution of this warrant, there will there be a genuine risk of destruction of evidence. However, that risk is mitigated because a preservation request was submitted to Google Inc. on November 19, 2018 for the **Target Account**.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

30.    Other than as described above, the United States has not attempted to obtain this data by other means.

### CONCLUSION

31.    Based on the foregoing, there is probable cause to believe items that constitute evidence and instrumentalities of violations of federal criminal law,

1  namely, 18 U.S.C. §§ 2252, 2252A, and 2242(b), as described in Attachment B, will

2  be found at the location to be searched, as provided in Attachment A.

3

4

5  _____

6  Kayade Ereme
   Special Agent

7  Homeland Security Investigations

8

9  Subscribed and sworn before me this ___18___ day of December, 2018.

10

11

12  _____
    Hon. JILL L. BURKHARDT

13  United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

17

# ATTACHMENT A

## DESCRIPTION OF LOCATIONS TO BE SEARCHED

Google, LLC (Google) is an American multinational technology company with its primary computer information systems and other electronic communications and storage systems, records and data located at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The property to be searched is the Google account associated with the following email address:

        a. emraldmonth@gmail.com (Target Account)

**ATTACHMENT B**

**I.      Service of Warrant**

The officer executing the warrant shall permit Google LLC, as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer. Notwithstanding the provisions of 18 U.S.C. §§ 2252 and 2252A, Google shall disclose responsive data, if any, by delivering encrypted files through their Law Enforcement Request (LER) system.

**II.     Information to be disclosed by Google, LLC (Google)**

Items subject to seizure include all subscriber and/or user information, all electronic mail, images, message, histories, buddy lists, profiles, address books, chat logs, methods of payment, detailed billing records, Internet Protocol (IP) logs, transactional data and any other files associated with the following Google email account from January 1, 2017 to the present:

Email Account:     emraldmonth@gmail.com (Target Account).

**III.    Information to be seized by the government**

The search of the data supplied by Google pursuant to this warrant will be conducted as provided in the "Procedures for Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to seizing electronic mail and attachments that are evidence of violations of 18 U.S.C. §§ 2252, 2252A, and 2422(b) for the period of January 1, 2017, to the present, and to the seizure of:

a.     Communications, records, and attachments tending to discuss or establish the sexual interest in children and/or the possession and distribution of child pornography, and/or efforts to employ, use, persuade, induce, entice, or coerce a minor to engage in sexual activity for which any person can be charged with a criminal offense;

b.      Communications, records, and attachments tending to identify the user of the account and any co-conspirators involved in the activities in III(a) above; and

c.      Communications, records, and attachments that provide context to any communications described above, such as electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail tending to identify users of the subject accounts;

Which are evidence of violations of 18 U.S.C. §§ 2252, 2252A, and 2422(b).